UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

ELLIOT N WILLIAMS                                    CASE NO.  2:20-CV-00277

VERSUS                                               JUDGE JAMES D. CAIN, JR.

MCDERMOTT   INTERNATION   INC   ET    MAGISTRATE JUDGE KAY
AL

**MEMORANDUM RULING**

Before the court is a Motion for Summary Judgment [doc. 22] filed by defendants

CB&I, LLC ("CB&I") and McDermott International, Inc. ("McDermott"), in response to

the employment discrimination suit brought by plaintiff Elliot Williams. Plaintiff opposes

the motion. Doc. 28.

**I.**
**BACKGROUND**

This suit arises from plaintiff's employment with CB&I at a site in Hackberry,

Louisiana, as a rigger journey from June 7, 2016, until his resignation on October 1, 2016.

Doc. 22, att. 3, pp. 4–7, 119. Plaintiff received and acknowledged CB&I's policies

concerning harassment and discrimination at the time he was hired. *Id.* at 16–18; *see id.* at

148–66. He worked as part of a six-person crew consisting of fellow rigger journeys Jesus

Govea, Kenneth Monroe, and Jerry Vincent, as well as crane operator Lawrence Adams

and foreman Paul Williams. *Id.* at 8–14, 127. Plaintiff alleges that Jerry Vincent would

make racist comments and jokes in front of the whole crew on an almost daily basis. *Id.* at

1

37–40. This behavior continued until about July 16, 2021, when plaintiff, Govea, and Monroe complained about Vincent to their new supervisor, foreman James Dever, who had replaced Paul Williams upon the latter's promotion to general foreman. *Id.* at 54–57. Dever took the group's complaints to Human Resources, which initiated an investigation. Doc. 22, att. 5, pp. 4–6. One week later, as a result of the investigation, CB&I issued Vincent a written warning and suspended Paul Williams. Doc. 22, att. 6, pp. 3–4.

After the investigation Vincent was also transferred to a different work group, and plaintiff admits that he never heard any racial comments from him again. Doc. 22, att. 3, pp. 87–89. Plaintiff alleges, however, that Paul Williams retaliated against him in his capacity as general foreman by assigning him menial tasks, finding excuses to reprimand him, and glaring at him.[1] *Id.* at 72–81. He also asserts that being placed under the microscope like this caused Jesus Govea to resign from CB&I in August 2016. *Id.* at 101. Plaintiff likewise resigned in October 2016, after his request to transfer to a CB&I location in another city was denied. *Id.* at 101–04. As grounds for his resignation plaintiff cited the hostile work environment and his fear that he was being made a target for termination. *Id.* at 104–05.

Plaintiff filed a charge of discrimination with the EEOC and received a dismissal and notice of right to sue from the agency on December 5, 2019. Doc. 1, att. 1. He then

---

[1] On one occasion, he alleges, Paul Williams falsely accused plaintiff of violating safety practices with respect to taglines. *Id.* at 83–87. Plaintiff proved that he had done no such thing, and another supervisor told plaintiff he would make the whole thing go away as long as plaintiff did not report Paul Williams to Human Resources. *Id.* Plaintiff could not recall the details of any other instance, however, and admitted that Paul Williams never reduced his hours or his pay. *Id.* at 72–81.

filed suit against CB&I and its parent company, McDermott, in this court, raising claims of racial discrimination and retaliation under Title VII of the Civil Rights Act and 42 U.S.C. § 1981. Doc. 1. Defendants now move for summary judgment on all claims, asserting that plaintiff cannot show sufficiently severe or pervasive racial harassment to constitute a hostile work environment or that he suffered any materially adverse employment action as a result of his report to HR. Doc. 22, att. 1. Plaintiff opposes the motion. Doc. 28.

## II.
### SUMMARY JUDGMENT STANDARD

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). He may meet his burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The non-moving party is then required to go beyond the pleadings and show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To this end he must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## III.
### LAW & APPLICATION

#### A. Racial Discrimination Claims

Plaintiff has alleged that he was exposed to a hostile work environment on account of his race, in violation of Title VII of the Civil Rights Act and 42 U.S.C. § 1981.[2] To establish a prima facie case of a hostile work environment, a plaintiff must show the following: (1) he belongs to a protected group, (2) he was subject to unwelcome harassment, (3) the complained-of harassment was due to his membership in a protected group (e.g., due to his race), (4) the harassment complained of affected a term, condition, or privilege of his employment, and (5) the employer knew or should have known of the harassment but failed to take prompt remedial action. *Mendoza v. Helicopter*, 548 F. App'x 127, 128–29 (5th Cir. 2013) (citing *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir.

---

[2] Claims of race discrimination and retaliation under 42 U.S.C. § 1981, which protects the right to make and enforce contracts, are analyzed under the same standards as those raised under Title VII of the Civil Rights Act. *Johnson v. Halstead*, 916 F.3d 410, 420 (5th Cir. 2019).

2002)). Defendants challenge plaintiff's ability to carry his burden on both the fourth and fifth elements.

Under the fifth element, an employer can only be held liable for harassment by a coworker if it knew or should have known of the behavior but failed to stop it. *Sharp v. City of Houston*, 164 F.3d 923, 929–30 (5th Cir. 1999). An employer "has actual knowledge of harassment that is known to 'higher management' or to someone who has the power to take action to remedy the problem." *Id.* at 929. An employer may have constructive knowledge of harassment when the harassment is pervasive, though such a finding is less likely when the employer has in place a procedure by which employees can report instances of harassment. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 656 (5th Cir. 2012).

Plaintiff admits that neither he nor his coworkers reported Vincent's behavior until after Dever replaced Paul Williams as foreman. The record shows that, after that report, prompt remedial action was taken. Nonetheless, plaintiff maintains that the employer had earlier constructive knowledge of Vincent's conduct through Paul Williams's alleged witness of it. Accordingly, he maintains that CB&I is liable for failing to step in earlier. Defendants dispute that Williams qualifies as higher management, and maintain that plaintiff has not introduced any competent evidence showing that Williams witnessed the harassing behavior.

For Title VII purposes, higher management "includes someone with not only the power to hire and fire the offending employee but also to take disciplinary action, to

provide significant input into employment decisions, to instruct the offending employee to cease the offending behavior, or to implement other means of taking remedial action." *Sharp*, 164 F.3d at 929. To prove Williams's categorization, both sides rely on the testimony of Sidney Murray, a former superintendent at CB&I's Hackberry site. Murray testified that neither foremen nor general foremen had hiring or firing authority. Doc. 28, att. 6, pp. 35–36. He noted that there were several zero-tolerance rules, mostly tied to safety but also including a rule against harassment and discrimination in the field. *Id.* at 36–37. However, he clarified that a foreman's authority upon witnessing a violation of these rules was limited to alerting a supervisor. *Id.* at 37–39. Paul Williams thus lacked the authority necessary to qualify as higher management and so any knowledge he had of Jerry Vincent's behavior does not qualify as actual knowledge on the part of the company.

Plaintiff also maintains that constructive knowledge can be established through the open and obvious nature of Vincent's conduct. To this end he has introduced evidence that Vincent made racial jokes and used racial slurs on a frequent basis in front of other members of the crew. Doc. 28, att. 2, pp. 165–79 (plaintiff's deposition); *see also* doc. 29, atts. 9–12 (crew member statements). As shown above, however, Williams does not qualify as higher management and so his knowledge cannot be imputed to the employer. The fact that the racial remarks were made in front of a few other non-higher management employees is insufficient. *See Sharp*, 164 F.3d at 930 (finding no constructive knowledge, even though coworkers "openly and pervasively harassed" plaintiff "within the closed context" of their employment unit, because it was not done in the presence of anyone whose

knowledge could be imputed to the employer). Additionally, CB&I had in place a policy for reporting such harassment and plaintiff admittedly failed to make use of this policy until several weeks after the comments allegedly began. Accordingly, the fifth element also fails on this basis and there is no need for the court to explore whether the harassment was sufficiently severe or pervasive to qualify under the fourth element. The defendants are entitled to summary judgment on these claims.

### B. Retaliation

To establish a prima facie claim of retaliation the plaintiff must show that (1) he participated in an activity protected by Title VII; (2) his employer took an adverse action against him; and (3) there is a causal link between the two. *Banks v. E. Baton Rouge Par. Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003). The burden next shifts to the defendant to produce evidence of a legitimate, non-retaliatory reason for the adverse employment action, and then back to plaintiff to show that defendant's reason is pretextual. *Septimus v. Univ. of Houston*, 399 F.3d 600, 607 (5th Cir. 2005).

Defendants maintain that plaintiff cannot meet his burden on the second element. "An adverse employment action is one that a reasonable employee would have found to be materially adverse, which in the retaliation context means that it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Williams v. Recovery Sch. Dist.*, 859 F.Supp.2d 824, 831 (E.D. La. 2012) (cleaned up). "[P]etty slights, minor annoyances, and simple lack of good manners" are not actionable retaliation under Title VII, even when inflicted by a supervisor. *Aryain v. Wal-Mart Stores Tex. LP*, 534

F.3d 473, 485 (5th Cir. 2008) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548

U.S. 53, 68 (2006)).

Plaintiff asserts that, after he filed his complaint with HR, Paul Williams subjected

him to the following retaliatory acts:

> 1) Williams transferred Plaintiff numerous times and among numerous crews without any notice or justification; 2) Williams repeatedly glared and rolled his eyes Plaintiff, and repeatedly threatened Plaintiff with termination using profane and threatening language; 3) Williams assigned Plaintiff menial, belaboring tasks that he had not ever been assigned as a journeyman rigger; 4) Williams continuously appeared at Plaintiff's work area, despite explicit instruction to leave Plaintiff alone, and nitpicked and degraded Plaintiff in in front of co-workers; and 5) and, when Plaintiff complained to Human Resources and requested a transfer to a different location and was denied, the combination of Williams' pervasive retaliatory action and Defendant's refusal or inability to move Plaintiff away from his harasser, was constructively discharged.

Doc. 28, p. 51. Plaintiff testified that Williams repeatedly threatened to have him fired and

derisively referenced the fact that plaintiff had gone to HR to complain about Vincent,

though plaintiff admitted he was never formally disciplined or reprimanded. Doc. 28, att.

2, pp. 150–51, 254–55. He also testified that Williams repeatedly reassigned him to

different crews in the few months he remained at CB&I, which in combination with the

negative reactions he faced from some employees for going to HR, contributed to his

inability to get settled with his duties and coworkers. *Id.* at 245–49. Finally, he testified

that Williams required plaintiff, Govea, and Monroe to manually move a giant pile of rebar

approximately five feet—a job technically within the description of his duties as a rigger,

but also a pointless task that seemed to have no purpose other than to belittle the plaintiff.

8

*Id.* at 215–19. Plaintiff stated that Williams, who did not regularly assign work to crew members as general foreman, also found other opportunities to assign menial tasks to plaintiff and his two coworkers, though he could not recall specifics. *Id.* at 219–21. Plaintiff further testified that he went to HR multiple times to complain of Paul Williams's conduct, and was advised that it would stop, but that Williams would not let up. *Id.* at 251–70. Additionally, he recalled that CB&I superintendent told him he could not go to HR unless he brought Paul Williams with him. *Id.*

Many of these occurrences, taken in isolation, amount only to the petty slights and minor annoyances that do not rise to Title VII's threshold. Taken together, however, and viewed in a light most favorable to plaintiff, they could be sufficient to dissuade a reasonable employee from filing or supporting a charge of discrimination. Plaintiff has alleged that a near-daily pattern of harassment from a supervisor followed from his decision to complain about a coworker's racially inappropriate remarks, and that the company failed to remedy the problem despite multiple reports to HR. This is enough to survive summary judgment; the court need not explore the alternative theory (not raised as a claim within the complaint but argued as such in plaintiff's opposition) of constructive discharge. The timing and Paul Williams's remarks chastising plaintiff for going to HR provide the necessary causal link, and so plaintiff has met his burden of setting forth a prima facie case. Accordingly, the motion will be **DENIED** as to the retaliation claims.

9

## IV.
### CONCLUSION

For these reasons, the Motion for Summary Judgment [doc. 22] will be **GRANTED**

**IN PART** and **DENIED IN PART**, with plaintiff's claims of racial discrimination

**DISMISSED WITH PREJUDICE**.

**THUS DONE AND SIGNED** in Chambers this 28th day of April, 2022.

_____
JAMES D. CAIN, JR.
UNITED STATES DISTRICT JUDGE